# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | |
|---|---|
| KATELYN WOLFF, ) <br> 703 Prince Charles Drive ) <br> La Plata, MD 20646, ) <br>  ) <br>   Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> ROMAN CATHOLIC ARCHDIOCESE OF ) <br> WASHINGTON, ) <br> 5001 Eastern Shore Avenue ) <br> Hyattsville, MD 20782 ) <br>  ) <br> SERVE: Roman Catholic Archbishop of ) <br> Washington, Kim Florentino ) <br> 5001 Eastern Avenue ) <br> Hyattsville, MD 20782 ) <br>  ) <br> and ) <br>  ) <br> ST. MARY'S CHURCH 0402, ) <br> 13715 Notre Dame Place ) <br> Bryantown, MD 20167 ) <br>  ) <br> SERVE: Roman Catholic Archbishop of ) <br> Washington, Kim Florentino ) <br> 5001 Eastern Avenue ) <br> Hyattsville, MD 20782 ) <br>  ) <br>  ) <br>   Defendants. ) | C.A. No. _____ <br><br> JURY TRIAL DEMANDED |

## **COMPLAINT**

### The Parties

1. Plaintiff Katelyn Wolff ("Ms. Wolff") is a female residing in La Plata, Charles County, Maryland.

1

2. Defendant Roman Catholic Archdiocese of Washington ("ADW") is a Catholic Archdiocese that includes the District of Columbia and five surrounding Maryland counties of St. Mary's, Charles, Calvert, Prince George's, and Montgomery. It also includes 90 Catholic schools serving 25,000 students. Its headquarters are located at 5001 Eastern Avenue, Hyattsville, Maryland 20782. Upon information and belief, ADW employes more than 50 employees.

3. Defendant St. Mary's Church 0402 ("St. Mary's") is a Catholic parish located at 13715 Notre Dame Place, Bryantown, MD 20167. Upon information and belief, St. Mary's employs more than 30 employees.

4. Defendants ADW and St. Mary's, individually and/or collectively, operate a private Catholic school known as St. Mary's School in Bryantown, Maryland ("St. Mary's School").

5. Ms. Wolff was an employee of Defendants ADW and/or St. Mary's at St. Mary's School from September 2020 until on or about March 5, 2024, first as a teacher and later as a teacher's aide. During her employment with Defendants, Defendants have asserted that she was bound by the policies, manuals, and handbooks of both ADW and St. Mary's.

6. Catherine Silverstone ("Silverstone") was, at all times relevant, the principal at St. Mary's School and the supervisor of Ms. Wolff.

7. All of Ms. Wolff's supervisors were at St. Mary's School, and the parish priest, Father Rory Conley ("Father Conley"), exercised oversight and control over Ms. Wolff's employment as explained herein.

8. Ms. Wolff's paychecks indicated that ADW was the payee of those paychecks.

### Jurisdiction & Venue

9. This is a civil action for damages arising under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg, *et seq.* ("PWFA"), the Fair Labor

Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the Family & Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA").

10. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Personal jurisdiction is proper since all parties either reside in the District, conduct business in the District, or the unlawful actions giving rise to the claim took place within this District.

12. Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because some or all of the defendants reside in this district and the events giving rise to the suit occurred in this judicial District.

## Administrative Exhaustion

13. Ms. Wolff filed a *pro se* Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about April 15, 2024. The EEOC assigned a Charge Number of 531-2024-01038 to Ms. Wolff's Charge. Ms. Wolff filed a *pro se* Amended Charge of Discrimination with the EEOC on or about May 20, 2024.

14. The EEOC issued a Right to Sue Letter to Ms. Wolff dated October 18, 2024. This suit is filed within ninety days of the issuance of the Right to Sue Letter.

## Wolff's Employment with Defendants

15. In September 2020, Ms. Wolff was hired as a first-grade teacher at St. Mary's. Prior to giving birth to her daughter on May 30, 2023, she made approximately $40,000 per year teaching at St. Mary's.

16. There were no problems with Ms. Wolff's performance or employment until she gave birth on May 30, 2023.

3

17. Because she gave birth toward the end of the academic school year, Ms. Wolff was initially told she could start maternity leave in September and October of 2023. But, just before she gave birth, St. Mary's, insurance company changed position and told Ms. Wolff she had to begin her maternity leave at the time of the birth. Ms. Wolff protested, and St. Mary's, through Father Conley and Silverstone, ultimately agreed she could take leave under the FMLA, and then return to work in January 2024. Accordingly, Ms. Wolff's first scheduled day back to school was January 2, 2024.

18. Ms. Wolff had to begin pumping breastmilk as soon as her daughter was born because her daughter had oral ties where she could not properly feed. Prior to Ms. Wolff's return to St. Mary's, Ms. Wolff emailed her pumping schedule to Silverstone. At some point before her return, Ms. Wolff met with Silverstone and Lisa Shumaker ("Shumaker"), who was St. Mary's HR Representative, to discuss her pumping schedule.

19. Approximately two weeks prior to Ms. Wolff's scheduled return to St. Mary's, Silverstone emailed Ms. Wolff and gave Ms. Wolff three "options", which were actually an ultimatum:

   a. The first "option" was for Ms. Wolff to return to St. Mary's teaching first grade and following a breast pumping schedule that Silverstone created;

   b. The second "option" was for Ms. Wolff to return as an aide, which was a demotion, and Ms. Wolff could pump breastmilk whenever she needed to do so; and

   c. The third "option" was that she could request an accommodation under the ADA through St. Mary's third-party vendor.

20. Ms. Wolff initially chose the third "option", but the third-party vendor denied her request for an accommodation.

4

21. Given a Hobson's choice between the first two "options", Ms. Wolff "chose" the second "option."

22. While Ms. Wolff knew aides made less than teachers, she did not find out until approximately January 17, 2024, that her "choice" included a reduction in pay from approximately $40,000 per year to approximately $20,000 per year. Additionally, unlike a teacher, she was not paid through the summer while working as an aide. She also had to clock out every time she went to express breastmilk.

23. Because Ms. Wolff was a teacher working as an aide, St. Mary's used Ms. Wolff to cover other teachers when they called out instead calling a substitute teacher. Demonstrating the pretext of the original Hobson's choice St. Mary's gave Ms. Wolff, when Ms. Wolff covered a classroom in another teacher's absence, Ms. Wolff was allowed to pump breastmilk on the schedule she had originally requested and without issue.

24. Ms. Wolff pointed out the discrepancy in St. Mary's position to Penny Bailey, the Office Secretary, after she had been back at St. Mary's for a couple of weeks during which time she covered other teachers' classrooms five or six times and was able to pump on her selected schedule.

25. On or about January 31, 2024, Ms. Wolff went to Father Conley, to complain about how Silvestone was mistreating her. Ms. Wolff told Father Conley that Silverstone was violating federal law with respect to the pumping schedule. Ms. Wolff also pointed out the discrepancies in St. Mary's position about her pumping schedule to Father Conley.

26. After Ms. Wolff complained to Father Conley and after she pointed out the discrepancy in St. Mary's position to Father Conley, St. Mary's behavior toward Ms. Wolff changed for the worse. For example:

a. Silverstone would not speak to Ms. Wolff in the hallway when they saw each other;

b. Silverstone only communicated with Ms. Wolff by email or written note;

c. Staff members of St. Mary's did not want to talk to Ms. Wolff, and those who did faced reprisal from the administration;

d. When Ms. Wolff would walk into a room, the other people in the room would stop talking; and

e. When Ms. Wolff indicated to St. Mary's that she was resigning and cleaning out her classroom, Julia Raley ("Raley"), the first grade teacher who replaced Ms. Wolff and to whom Ms. Wolff was assigned as an aide, confronted and yelled at Ms. Wolff in the hallway for taking items out of the room and resigning.

27. Due to St. Mary's treatment of her, including the ongoing harassment, Ms. Wolff resigned her position on or around February 20, 2024. Ms. Wolff gave two-weeks notice and indicated her last day would be on or about March 5, 2024.

28. Ms. Wolff met again with Father Conley on the morning of February 27, 2024, after she realized that Silverstone had deactivated her St. Mary's email account and after Silverstone told Ms. Wolff she was no longer welcome at St. Mary's. Father Conley asked Ms. Wolff to come back for a meeting on February 28 with Silverstone and Shumaker. Ms. Wolff agreed and attended that meeting in which Father Conley wanted to know what they could do differently to support mothers.

29. Because St. Mary's did not have unemployment insurance, St. Mary's did not provide Ms. Wolff's wages to the State of Maryland's unemployment program. When Ms. Wolff went to seek unemployment benefits, she did not qualify because there was no record of her working.

**Damages**

30. As a direct and proximate result of Defendants' actions and inactions, Ms. Wolff suffered the following damages:

   a. Lost wages, front and back;

   b. Lost benefits, front and back;

   c. Humiliation and embarrassment at work and in the community;

   d. Disruption to her life; and

   e. Emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT I: DISPARATE TREATMENT**

31. Plaintiff incorporates all of the foregoing allegations into this Count as though they are specifically stated herein.

32. As a female who had recently given birth, Ms. Wolff was in a protected category.

33. Ms. Wolff was qualified for the position as a first grade teacher at St. Mary's as evidenced by her college degree in education and the fact that she had been working there in that role from September 2020 until May 2023 without incident.

34. Ms. Wolff suffered two adverse employment actions because she was breastfeeding:

   a. First, she was forced to take a demotion in title and pay as an aide if she wanted to express breastmilk when she needed to do so; and

   b. Second, she was constructively discharged because St. Mary's made her working conditions so intolerable that no reasonable person would be expected to continue working under those conditions.

7

35. Ms. Wolff's adverse employment actions occurred under circumstances suggesting discrimination:

   a. Ms. Wolff was told that the pumping schedule she initially presented and requested was unworkable which was used as a ruse to force her into "choosing" a demotion;

   b. When Ms. Wolff pointed out that her requested pumping schedule was working while she was covering other teachers' classrooms in their absence, St. Mary's quit communicating with her and coerced Ms. Wolff's colleagues into not working with her.

36. As a result of Defendants' actions and inactions, Ms. Wolff suffered the damages identified in Paragraph 30.

37. Defendants' willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 2000e, *et seq*.

## COUNT II: HOSTILE WORK ENVIRONMENT

38. Plaintiff incorporates all of the foregoing allegations into this Count as though they are specifically stated herein.

39. Ms. Wolff was subjected to unwanted harassment because of her gender and pregnancy, including, without limitation:

   a. Being forced to accept a demotion to work as a teacher's aide;

   b. Being denied the ability to communicate orally with Silverstone, her supervisor;

   c. Being ostracized by her co-workers who feared reprisal from Silverstone if they spoke to Ms. Wolff; and

   d. Being yelled at by her supervisors and co-workers.

40. The harassment outlined in Paragraph 39 was severe or pervasive in that it was constant over a relatively short period of time consisting of less than two months.

41. The harassment altered the terms of her employment.

42. The harassment outlined in Paragraph 39 would cause a reasonable person in Ms. Wolff's position to feel harassed and to suffer emotional distress.

43. The harassment outlined in Paragraph 39 caused Ms. Wolff to feel harassed and to suffer emotional distress.

44. The harassment outlined in Paragraph 39 culminated in Ms. Wolff's constructive discharge. Defendants made her working conditions so intolerable that no reasonable person would be expected to continue working under those conditions.

45. Much, if not all, of the harassment came from Silverstone or as a result of Silverstone bullying Ms. Wolff's coworkers into ostracizing Ms. Wolff. Upon information and belief, Silverstone had the ability to hire and fire Ms. Wolff as evidenced by the fact she terminated Ms. Wolff's active employment on February 27. Because Ms. Wolff's harasser had the ability to hire and fire Ms. Wolff and because the harassment led to her constructive discharge, Defendants are liable for the hostile work environment endured by Ms. Wolff.

46. As a result of Defendants' actions and inactions, Ms. Wolff suffered the damages identified in Paragraph 30.

47. Defendants willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 2000e, *et seq*.

### COUNT III:  RETALIATION

48. Plaintiff incorporates all of the foregoing allegations into this Count as though they are specifically stated herein.

49. Ms. Wolff engaged in protected conduct in that she:

a. Complained about Silverstone's treatment of her to Father Conley; and

    b. Complained to Father Conley and Shumaker that she was forced to take a demotion rather than pump on her selected schedule when, in reality, she could have remained a teacher and pumped on her selected schedule.

50. After she complained to Father Conley, Father Conley held a meeting with Silverstone in which he voiced Ms. Wolff's concerns. Immediately thereafter, Silverstone's treatment of Ms. Wolff got worse in that, at a minimum: Ms. Wolff was denied the ability to communicate orally with Silverstone, her supervisor; Ms. Wolff was ostracized by her co-workers who feared reprisal from Silverston if they spoke to Ms. Wolff; and Ms. Wolff was yelled at by her supervisors and co-workers. These intolerable working conditions culminated in Ms. Wolff's constructive discharge on or about February 20, 2024.

51. There is a causal connection between Ms. Wolff's protected conduct and her constructive discharge as the harassment of Ms. Wolff increased and worsened immediately after she complained to Father Conley and Shumaker. This close temporal proximity, at a minimum, is indicative of causation. Moreover, the hostility shown to her between her protected activity and her constructive discharge are indicative of causation.

52. As a result of Defendants' actions and inactions, Ms. Wolff suffered the damages identified in Paragraph 30.

53. Defendants willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 2000e, *et seq*.

**COUNT IV: VIOLATIONS OF THE PWFA**

54. Plaintiff incorporates all of the foregoing allegations into this Count as though they are specifically stated herein.

55. Ms. Wolff was a "qualified employee" under the PWFA because she had the inability to perform all of the essential functions of her job for a temporary period of time – while she was pumping breastmilk – but they could be performed in the near future.

56. Ms. Wolff attempted to pump on her selected schedule – and one that she had been using since the birth of her daughter – when she returned to work.

57. Defendants claimed Ms. Wolff's selected pumping schedule could not be accommodated and forced her into a Hobson's choice of either pumping on Silverstone's selected pumping schedule and remaining a first grade teacher or being able to pump on her schedule and accepting a forced demotion to the role of teacher's aide.

58. Defendants failed to accommodate or engage in a good faith interactive process Ms. Wolff's need to express breastmilk in violation of the PWFA.

59. Moreover, as Ms. Wolff later learned when she covered other teachers' classrooms in their absence, her selected pumping schedule in fact did not cause an undue hardship on Defendants. Thus, in forcing Ms. Wolff to accept a demotion, Defendants required her to accept an unreasonable accommodation (e.g., the demotion to teacher's aide) in violation of the PWFA.

60. As a result of Defendants' actions and inactions, Ms. Wolff suffered the damages identified in Paragraph 30.

61. Defendants willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 42 U.S.C. §§ 2000gg, *et seq.*

## COUNT V:  VIOLATION OF PUMP ACT

62. Plaintiff incorporates all of the foregoing allegations into this Count as though they are specifically stated herein.

63. St. Mary's is a private elementary or secondary school, subject to the FLSA under 29 U.S.C. §§ 203(r) and (s).

64. Section 218d of the FLSA is known as the PUMP Act and required Defendants to give Ms. Wolff reasonable break time for her to express breast milk for her daughter each time Ms. Wolff needed to do so.

65. Defendants violated the PUMP Act, at a minimum, when it forced her to "choose" a demotion rather than be able to express breastmilk for her daughter when she needed to do so.

66. As a result of Defendants' actions and inactions, Ms. Wolff suffered the damages identified in Paragraph 30.

67. Defendants willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 29 U.S.C. §§ 218d, *et seq.*

### COUNT VI: FAILURE TO REINSTATE UNDER THE FMLA

68. Plaintiff incorporates all of the foregoing allegations into this Count as though they are specifically stated herein.

69. St. Mary's is a private elementary or secondary school, subject to the FMLA under 29 U.S.C. § 2618(a).

70. Ms. Wolff was an eligible employee under the FMLA because she had been employed by Defendants for at least 12 months prior to requesting her leave and had put in at least 1,250 hours of service at St. Mary's within the previous 12-month period.

71. Further demonstrating that Ms. Wolff was an eligible employee under the FMLA, Defendants granted Ms. Wolff FMLA leave following the birth of her daughter in May 2023 until January 2024.

72. Defendants, however, violated the FMLA, at a minimum, when they failed to restore Ms. Wolff to the job of teacher with equivalent employment benefits, pay, and other terms and conditions of employment when she returned from maternity leave.

73. As a result of St. Defendants' actions and inactions, Ms. Wolff suffered the damages identified in Paragraph 30.

74. Defendants willful, intentional, and unlawful actions violate the laws and regulations of the United States, including, without limitation, 29 U.S.C. §§ 2601, *et seq*.

## Jury Demand

75. Ms. Wolff demands a jury to resolve all factual disputes.

WHEREFORE, Plaintiff Katelyn Wolff respectfully requests this Court:

A. Enter judgment in her favor against Roman Catholic Archdiocese of Washington and St. Mary's Church 0402 jointly and severally;

B. Award her back pay and front pay as she can prove;

C. Award her compensatory damages;

D. Award her special damages and/or punitive damages as she can prove;

E. Award her liquidated damages pursuant to 29 U.S.C. § 216(b);

F. Award her costs and reasonable attorneys' fees;

G. Award her pre- and post-judgment interest; and

H. Grant such other relief as the Court deems appropriate.

**COCKEY, BRENNAN & MALONEY, PC**

 */s/ Robin R. Cockey*
Robin R. Cockey, Esq. (MD 02657)
313 Lemmon Hill Lane
Salisbury, MD  21801
(t) (410) 546-1750
(f) 410) 546-1181
rrcesq@cmblawfirm.com

| | |
|---|---|
| **OF COUNSEL:** | **JACOBS & CRUMPLAR, P.A.**<br>Patrick C. Gallagher, Esq.<br>(DE 5170) - *Pro Hac Vice Application Forthcoming*<br>10 Corporate Circle, Suite 301<br>New Castle, DE  19720<br>(t) (302) 656-5445<br>(f) (302) 656-5875<br>pat@jcdelaw.com |
| DATE:  January 14, 2025 | *Attorneys for Plaintiff* |